1  MORGAN, LEWIS & BOCKIUS LLP
   Deanne L. Miller, Bar No. 185113
2  Brianna R. Howard, Bar No. 314642
   300 South Grand Ave., 22nd Floor
3  Los Angeles, CA 90071
   Telephone: (213) 612-2536
4  Facsimile: (213) 612-2501
   deanne.miller@morganlewis.com
5  brianna.howard@morganlewis.com

6  *Attorneys for Defendants*
   MERCK & CO., INC. and MERCK
7  SHARP & DOHME LLC

8

9

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**

12  EDUARDO ATJIAN, II,                 Case No. 2:22-cv-01739

13              Plaintiff,              Hon. André Birotte Jr.

14       v.

15  MERCK & CO., INC., and MERCK        **DEFENDANTS MERCK & CO., INC.,**
    SHARP & DOHME CORP.,                **AND MERCK SHARP & DOHME**
16                                      **LLC'S NOTICE OF MOTION AND**
                Defendants.             **MOTION TO DISMISS PLAINTIFF'S**
17                                      **COMPLAINT; MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES IN**
18                                      **SUPPORT THEREOF**

19                                      [Filed concurrently with Declaration of
                                        Deanne L. Miller, Request for Judicial
20                                      Notice and Proposed Order]

21
                                        Hearing Date: August 19, 2022
22                                      Time:          10:00 a.m.
                                        Courtroom:     7B
23
                                        Action Filed: March 16, 2022
24                                      Trial Date:    None Set

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 19, 2022 at 10:00 a.m., in the Courtroom of the Honorable Andre Birotte Jr., United States District Judge of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendants Merck & Co., Inc., and Merck Sharp & Dohme LLC (collectively, "Merck")[1] will and hereby do move to dismiss the Complaint ("Complaint") of Plaintiff Eduardo Atjian II, for failure to state a claim, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

Plaintiff's claims require dismissal because they are thinly veiled design defect claims preempted under federal law; they are barred by the learned intermediary doctrine under both California law and as codified in the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1 *et seq.* ("Vaccine Act"); they fail to state a claim under California state law; and they are insufficiently pled under well-settled federal pleading standards.  This motion is made following the conference of counsel pursuant to L.R. 7-3 on June 30, 2022.

This motion is based on the instant notice, accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Deanne M. Miller, the complete Court file, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

Dated: July 6, 2022

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Deanne L. Miller*

Deanne Miller
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Telephone: (213) 612-2536
deanne.miller@morganlewis.com
*Attorney for Defendants*

---

[1] Merck Sharp & Dohme Corp. has merged into and is now known as Merck Sharp & Dohme LLC.  The sole member of Merck Sharp & Dohme LLC is Merck & Co., Inc.  Defendants will be collectively identified as "Merck Defendants" or "Merck."

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................1

II.     FACTUAL BACKGROUND .........................................................................4

    A.    Gardasil and Gardasil 9 Are FDA-Approved Vaccines that Protect Against Certain Cancers and Other Diseases ..........................4

    B.    Public Health, Medical, and Scientific Authorities Back Gardasil ......5

    C.    Plaintiff Abandoned His Vaccine Court Claim ...................................7

III.    ARGUMENT .................................................................................................7

    A.    Federal Law Preempts Plaintiff's Design Defect Claims ....................8

    B.    Plaintiff's Manufacturing Defect Claim Fails .....................................9

    C.    Plaintiff's Warning-Related Claims Fail ...........................................11

        1.    Plaintiff's Theory Based on Merck's Alleged Failure to Warn Him Fails..............................................................................12

        2.    Plaintiff Fails to Allege That Any Alleged "Failure to Warn" His Prescriber(s) Caused His Injuries..........................13

    D.    Plaintiff's Breach of Express Warranty Claim Fails. .........................15

    E.    Plaintiff's Common Law Fraud Claim Fails.......................................16

        1.    Alleged Public Advertisements ................................................17

        2.    Alleged Marketing to the Medical Community........................18

        3.    Alleged Fraudulent Conduct....................................................20

        4.    Other Allegedly Fraudulent Conduct ......................................21

    F.    Plaintiff Fails to State a Claim under the UCL and Seeks Unavailable Remedies...................................................................21

        1.    Plaintiff's Failure to State a Claim under the UCL .................21

        2.    Plaintiff's Unavailable Remedies ............................................22

    G.    Plaintiff's Shotgun Negligence Claim Fails. .....................................23

IV.     CONCLUSION ...........................................................................................25

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

6

*Adams v. I-Flow Corp.*,
   2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) .................................... 16

7

8

*Adkins v. Apple Inc.*,
   147 F. Supp. 3d 913 (N.D. Cal. 2014).............................................. 16

9

10

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ............................................................ 16

11

12

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) ....................................... 13, 22

13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 14, 15

14

15

*Atjian v. Sec'y of Health & Hum. Servs.*,
   2022 WL 792105 (Fed. Cl. Feb. 14, 2022) ........................................ 7

16

17

*Baker v. Bayer Healthcare Pharm., Inc.*,
   2013 WL 6698653 (N.D. Cal. Dec. 19, 2013) ................................... 21

18

19

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ............................................................. 23

20

21

*Bigler-Engler v. Breg, Inc.*
   7 Cal. App. 5th 276 (2017) .................................................... 3, 20, 21

22

23

*Blackmon v. Am. Home Prods. Corp.*,
   328 F. Supp. 2d 659 (S.D. Tex. 2004)................................................ 12

24

*Broge v. ALN Int'l, Inc.*,
   2018 WL 2197524 (N.D. Cal. May 14, 2018) ................................... 22

25

26

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) ............................................................... 1, 8, 9

27

28

*Carlin v. Super. Ct.*,
   13 Cal. 4th 1104 (Cal. 1996) ............................................................. 13

*Colbath v. Merck & Co., Inc.*,
   2022 WL 935195 (S.D. Cal. Mar. 29, 2022)................................................*passim*

*In re Coordinated Latex Glove Litig.*,
   99 Cal. App. 4th 594 (2002) .............................................................. 10

*Dorsett v. Sandoz, Inc.*,
   2010 WL 11512276 (C.D. Cal. June 29, 2010)...........................15, 19

*Eldib v. Bausch & Lomb, Inc.*,
   2021 WL 4734641 (C.D. Cal. June 8, 2021)........................................9

*Flores v. Merck & Co., Inc.*,
   2022 WL 798374 (D. Nev. Mar. 16, 2022)................................*passim*

*Forty Niner Truck Plaza, Inc. v. Shank*,
   2011 WL 4386299 (E.D. Cal. Sept. 20, 2011) ................................... 22

*Herlth v. Merck & Co., Inc.*,
   2022 WL 788669 (D. Conn. Mar. 15, 2022)............................*passim*

*Hill v. Davol Inc.*,
   2016 WL 10988657 (C.D. Cal. Nov. 16, 2016) ................................ 19

*Hoffman v. 162 N. Wolfe LLC*,
   228 Cal. App. 4th 1178 (2014) ....................................................3, 20

*Holmes v. Merck & Co., Inc.*,
   697 F.3d 1080 (9th Cir. 2012) ..............................................8, 12, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)..............................................................22, 23

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ............................................................ 20

*Marroquin v. Pfizer, Inc.*,
   367 F. Supp. 3d 1152 (E.D. Cal. 2019) .......................................10, 19

*Motus v. Pfizer Inc. (Roerig Div.)*,
   358 F.3d 659 (9th Cir. 2004) ........................................................... 14

*Nimtz v. Cepin*,
   2011 WL 831182 (S.D. Cal. Mar. 3, 2011)...................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

*Patton v. Forest Labs.*,
   LLC, 2018 WL 5270476 (C.D. Cal. May 10, 2018), *aff'd sub nom.*
   *Patton v. Forest Labs., Inc.*, 793 F. App'x 608 (9th Cir. 2020)..........................22

*Renteria v. Ethicon, Inc.*,
   2020 WL 7414744 (C.D. Cal. Nov. 18, 2020) ....................................................14

*Saavedra v. Eli Lilly & Co.*,
   2013 WL 3148923 (C.D. Cal. June 13, 2013)......................................................22

*Shahbaz v. Johnson & Johnson*,
   2020 WL 5894590 (C.D. Cal. July 31, 2020) ......................................................13

*Simonyan v. Ally Fin. Inc.*,
   2013 WL 45453 (C.D. Cal. Jan. 3, 2013)..............................................................14

*Solis v. City of Fresno*,
   2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ........................................................14

*Sollberger v. Wachovia Sec., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010).......................................................23

*Stratton v. Merck & Co., Inc.*,
   2021 WL 5416705 (D.S.C. Nov. 17, 2021) ................................................*passim*

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016).................................................................23

*Sukonik v. Wright Med. Tech., Inc.*,
   2015 WL 10682986 (C.D. Cal. Jan. 26, 2015)......................................................16

*Tapia v. Davol, Inc.*,
   116 F. Supp. 3d 1149 (S.D. Cal. 2015) .................................................................16

*Valentine v. Baxter Healthcare Corp.*,
   68 Cal. App. 4th 1467 (Cal. App. 1999) ...............................................................21

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) .................................................................................14

*Wendell v. Johnson & Johnson*,
   2010 WL 271423 (N.D. Cal. Jan. 20, 2010) .........................................................22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

*Westgate v. Coloplast Corp.*
    2018 WL 6380746 (C.D. Cal. Sept. 6, 2018) ........................................ 21

*Zetz v. Bos. Sci. Corp.*,
    398 F. Supp. 3d 700 (E.D. Cal. 2019) ................................... 17, 18, 19

**Statutes**

42 U.S.C. § 300aa-22(b)(1) ........................................................................ 8

42 U.S.C. § 300aa-22(c) ..................................................................... 12, 16

California's Unfair Competition Law ........................................................ 3

UCL ................................................................................................... *passim*

Vaccine Act ...................................................................................... *passim*

**Other Authorities**

10/16/2009 FDA Approval Letter .............................................................. 5

10/5/2018 FDA Approval Letter ............................................................... 5

12/10/2014 FDA Approval Letter. Gardasil 9 .......................................... 5

12/14/2015 FDA Approval Letter. The FDA ............................................ 5

12/22/2010 FDA Approval Letter. Because of the .................................... 5

6/12/2020 FDA Approval Letter ................................................................ 5

9/12/2008 FDA Approval Letter ................................................................ 5

Ex. C, Eugene M. Helveston, *Scotopic Sensitivity Syndrome* .................. 1

Rule 8 ......................................................................................................... 4

Rule 8(a) ................................................................................................... 24

Rule 9(b) ........................................................................................... *passim*

Rule 9(b)'s ................................................................................................ 21

Rule 11 ...................................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Eduardo Atjian II's ("Plaintiff") Complaint is premised on the unfounded theory that his vaccination with Gardasil, Merck's FDA-approved, CDC-recommended, life-saving human papillomavirus ("HPV") vaccine, caused him to develop a range of medical conditions, including Chronic Fatigue Syndrome ("CFS") and Irlen syndrome.[2]  For several reasons, Plaintiff's groundless claims should fail.

*First*, the Complaint alleges thinly-veiled design-defect claims that the Vaccine Act expressly preempts.  The hundreds of paragraphs that Plaintiff devotes in his Complaint to attacking Gardasil and its ingredients violate the Vaccine Act, as interpreted by the U.S. Supreme Court, *see Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 243 (2011), and by other federal courts that have dismissed substantively identical allegations in other Gardasil cases.  *See Colbath v. Merck & Co., Inc.*, 2022 WL 935195, at *5 (S.D. Cal. Mar. 29, 2022); *Flores v. Merck & Co., Inc.*, 2022 WL 798374, at *3 (D. Nev. Mar. 16, 2022); *Stratton v. Merck & Co., Inc.*, 2021 WL 5416705, at *2–3 (D.S.C. Nov. 17, 2021).  All such design-defect claims in this case—including those alleged in Counts One and Three—likewise should fail here as a matter of law.

*Second*, Plaintiff's manufacturing defect claim (Count Three) also lacks the

---

[2] CFS, also known as ME/CFS, is a condition characterized by extreme exhaustion lasting for at least six months.  According to the Mayo Clinic, the cause of ME/CFS is unknown. Ex. A, Cleveland Clinic, Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("ME/CFS").  Irlen syndrome, also known as scotopic sensitivity syndrome ("SSS") is a "proposed perceptual disorder with controversial diagnostic status."  *See* Ex. B, American Academy of Pediatrics, Irlen Colored Overlays Do not Alleviate Reading Difficulties.  Ophthalmologists have described SSS as a visual defect "related to difficulties with light source, glare, luminance, wave length, and black/white contrast."  *See* Ex. C, Eugene M. Helveston, *Scotopic Sensitivity Syndrome*, 108(9) Archives of Ophthalmology 1232 (1990).

factual allegations that, if proven, would demonstrate that Plaintiff's specific doses deviated from the FDA-approved design of Gardasil.  Plaintiff admits that the Gardasil doses administered to him were "as designed." Compl., ¶ 411.  Plaintiff has recycled allegations that have failed in every other federal court to address similarly deficient Gardasil manufacturing defect claims, and they should fail again.  *See Colbath*, 2022 WL 935195, at *5; *Flores*, 2022 WL 798374, at *7; *Herlth v. Merck & Co.*, *Inc.*, 2022 WL 788669, at *5–6 (D. Conn. Mar. 15, 2022); *Stratton*, 2021 WL 5416705, at *3–4.

**Third,** the Vaccine Act and California's learned intermediary doctrine bar Plaintiff's claims that Merck did not provide adequate warnings to anyone other than the physician(s) who prescribed Gardasil to him ("Prescriber(s)").  In particular, Plaintiff cannot recover for any purported failure to directly warn him or the public.  *See, e.g., Flores,* 2022 WL 788374, at *4; *Stratton,* 2021 WL 5416705, at *5; *but see Colbath,* 2022 WL 935195, at *6 (finding no duty to warn plaintiff, his parents or the public in general, but finding allegations regarding duty to warn plaintiff's *medical providers* sufficient to state claim in case where plaintiff identified prescribing physician).

**Fourth**, Plaintiff has not alleged that his Prescriber(s) – healthcare provider(s) whom Plaintiff never identifies by name in his sprawling Complaint – read or even saw the FDA-approved Prescribing Information ("Label") for Gardasil or any other materials from Merck before prescribing Gardasil to Plaintiff.  As Plaintiff cannot recover for his warning-related claims (principally, Count Two) without alleging facts that, if proven, could demonstrate that his Prescriber relied on warnings provided by Merck in prescribing Gardasil to him, Plaintiff's warnings-related claims should fail as a matter of law.

**Fifth**, the Vaccine Act and learned intermediary doctrine also bar Plaintiff's breach of express warranty claim (Count Four), which he bases on cursory allegations about statements that Merck purportedly **directed to Plaintiff**, not his

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

Prescriber(s), about Gardasil.  Compl. ¶¶ 423-28; *Colbath,* 2022 WL 935195, at *10.  Under the learned intermediary doctrine, express warranties run to the physician and not to the plaintiff.  Because Plaintiff does not allege that his Prescriber(s) relied on the express warranties contained in Gardasil's packaging and promotional materials, and alleges instead only that ***Plaintiff*** relied on Merck's advertisements (Compl., ¶ 428), his claim for breach of warranties should fail as a matter of law.

**Sixth**, Plaintiff's fraud claim (Count V) does not satisfy Rule 9(b): Plaintiff has not alleged, among other things, "with particularity when" Merck purportedly made any "allegedly false statements" and has not alleged "with specificity the who, what, when, where, or how of the supposedly fraudulent communications" to his Prescriber(s).  *Stratton*, 2021 WL 5416705, at *1, *7–8; *see Flores*, 2022 WL 798374, at *7–8; *Herlth*, 2022 WL 788669, at *9–10; *see also Colbath,* 2022 WL 935195, at *5 (dismissing intentional and negligent misrepresentation claims as deficient but permitting fraudulent concealment allegations).

Further, even if Plaintiff intends his "Common Law Fraud" claim to be one that alleges some sort of fraudulent concealment, the claim still fails for the additional reason that Plaintiff has not and cannot plead the necessary facts for that cause of action, let alone with the requisite particularity for pleading fraud.  There is no "relationship" between Plaintiff and Merck sufficient to satisfy the duty element of fraudulent concealment, and none of the few facts alleged in Plaintiff's Complaint suggest otherwise.  *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)); *Bigler-Engler v. Breg, Inc.* 7 Cal. App. 5th 276, 290 (2017).  No such duty exists.  Plaintiff does not allege any direct dealings between himself and Merck at all, let alone contact and interaction sufficient to allege a relationship that gives rise to a duty to disclose.

**Seventh**, Plaintiff has no basis to pursue any claim based on California's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

Unfair Competition Law ("UCL"), including restitution (Count VI).  The Vaccine Act, California's learned intermediary doctrine, Rule 9(b), and the fact that Plaintiff seeks relief beyond any allowed by the UCL all warrant the dismissal of his claim.

*Finally*, the Court should dismiss Plaintiff's shotgun negligence claim (Count I).  His "superfluous number of allegations" and aggregated claims do not qualify as the short and plain statement required by Rule 8.  *Flores*, 2022 WL 798374, at *4.

Rather than stating any viable claim, Plaintiff's Complaint perpetuates debunked "anti-vaxxer" conspiracy theories that have circulated on the internet for years.  In reality, the medical and scientific consensus is clear:  Gardasil is a safe, effective, and groundbreaking vaccine that helps prevent certain cancers, precancerous and dysplastic lesions, and genital warts, caused by certain types of HPV.  The CDC, the FDA, Health Canada, the European Medicines Agency ("EMA"), the World Health Organization ("WHO"), and other reputable organizations likewise back Gardasil as safe and effective.  Plaintiff's claims to the contrary are so far-fetched that he abandoned them in the Office of the Special Masters in the U.S. Court of Federal Claims ("Vaccine Court"), a no-fault forum that awards compensation for vaccine-related injuries.  Compl., ¶¶ 359-60.  The Court should dismiss the Complaint with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Gardasil and Gardasil 9 Are FDA-Approved Vaccines that Protect Against Certain Cancers and Other Diseases

Gardasil protects against cervical, vulvar, vaginal, and anal cancer and their associated precancerous lesions, as well as genital warts, caused by certain types of HPV. *E.g.* Ex. D, Gardasil Label at 1.  First approved in the FDA in 2006, the original quadrivalent Gardasil prevents infection with HPV types 16 and 18, "two high-risk HPVs that cause about 70% of cervical cancers and an even higher percentage of some of the other HPV-caused cancers," and types 6 and 11, "which

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

cause 90% of genital warts." Ex. E, National Institutes of Health ("NIH"), National Cancer Institute, HPV Vaccines at 1.[3]

The FDA approved Gardasil 9 in 2014.  Ex. I, 12/10/2014 FDA Approval Letter.  Gardasil 9 protects against HPV infection from the same four HPV types in Gardasil, but adds protection for other oncogenic HPV types 31, 33, 45, 52 and 58. The additional HPV types targeted by Gardasil 9 account for an additional 10 to 20% of cervical cancers.  Ex. I at 1.  In 2015, the FDA extended the indication for Gardasil 9 to young men (16-26 years old) for the prevention of anal cancer, genital warts, certain precancerous lesions, and anal intraepithelial neoplasia caused by the HPV types Gardasil 9 targets.  Ex. J, 12/14/2015 FDA Approval Letter.  The FDA expanded the age range indicated for Gardasil 9 for men and women to include ages 27-45 in 2018, and in 2020 approved Gardasil 9 for the prevention of oropharyngeal and other head and neck cancers caused by the HPV types targeted by Gardasil 9. Ex. K, 10/5/2018 FDA Approval Letter; Ex. L, 6/12/2020 FDA Approval Letter.

### B.  Public Health, Medical, and Scientific Authorities Back Gardasil

Reputable regulatory authorities, medical organizations, and scientific organizations continue to find that Gardasil is safe and effective.

In the U.S., the safety of Gardasil is continuously monitored by both the CDC and the FDA through VAERS and by the CDC through the Vaccine Safety Datalink and the Clinical Immunization Safety Assessment Network. Ex. M, CDC, When to Get HPV Vaccine; Ex. N, CDC, HPV Vaccination is Safe and Effective ("As with all approved vaccines, CDC and FDA closely monitor the safety of HPV vaccines [after

---

[3] The FDA approved Gardasil in 2008 for the prevention of certain vulvar and vaginal cancers, in 2009 for the prevention of genital warts caused by HPV types 6 and 11 in boys and young men (9-26 years old), and in 2010 for the prevention of anal cancer and associated precancerous lesions in both men and women.  Ex. F, 9/12/2008 FDA Approval Letter; Ex. G, 10/16/2009 FDA Approval Letter; Ex. H 12/22/2010 FDA Approval Letter.  Because of the additional protections provided by Gardasil 9, the original quadrivalent Gardasil is no longer available in the U.S. Although Plaintiff generically alleges that he received Gardasil, the timing of his two alleged doses in 2019 makes it likely that he received Gardasil 9.  Regardless of which vaccine he received, Gardasil's safety and efficacy are well-proven, and his claims should be dismissed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

they are licensed].”); Ex. O (“HPV vaccine safety monitoring by CDC and FDA continues to look for rare or new problems that may happen after vaccination.”). Additionally, Gardasil is manufactured in lots, all of which are “routinely tested and must pass all tests before they can be used.” Ex. P.  According to the CDC, “[t]here have been no confirmed safety signals (i.e., higher than expected number of adverse events) observed, with the exception of [ ] fainting,” which “can happen after any medical procedure.” Ex. O.  The CDC has also observed that “[f]indings from many vaccine safety monitoring systems and more than 160 studies have shown that each of the HPV vaccines [including Gardasil] has a favorable safety profile.” Ex. Q.  And in 2019, the CDC specifically confirmed that with respect to CFS, “[n]o unusual or unexpected patterns of reporting ME/CFS following HPV vaccine were detected.” Ex. Q, CDC, Vaccine Safety and Effectiveness Data.

The FDA has stated that the “FDA and CDC continue to find that Gardasil is a safe and effective vaccine,” that Gardasil’s “benefits continue to outweigh its risks,” and that the “FDA and CDC continue to monitor the safety of this vaccine, with the public’s health and safety our top priority.” Ex. P. The CDC has separately confirmed the overall safety and effectiveness of Gardasil, writing that “[t]he safety of HPV vaccine has been well studied,” and that “[a]ll three HPV vaccines,” including Gardasil, “went through years of extensive safety testing before [they were] licensed by the FDA, which only licenses a vaccine if it is safe, effective, and the benefits outweigh any risks.” Ex. O, CDC, Questions about HPV Vaccine Safety.  According to the CDC, “over 15 years of monitoring have shown that HPV vaccines are very safe.” Ex. M, at 2.

Entities outside the US continue to share the same sentiment.  The WHO’s Global Advisory Committee on Vaccine Safety “considers HPV vaccines to be extremely safe” and has stated “there is still no evidence to suggest a causal association between HPV vaccine and CRPS, POTS or the diverse symptoms that include pain and motor dysfunction.” Ex. R, WHO, Safety Update of HPV

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK’S MOTION TO DISMISS

Vaccines. The WHO has even advanced a "[g]lobal strategy to accelerate the elimination of cervical cancer as a public health problem," which calls for "90% of girls [to be] fully vaccinated with HPV vaccine by age 15." Ex. S, WHO, Global strategy to accelerate the elimination of cervical cancer as a public health problem (Nov. 2020).  The EMA has also concluded that "[t]he benefits of HPV vaccines . . . continue to outweigh their risks." Ex. T, EMA, Review Concludes Evidence Does Not Support That HPV Vaccines Cause CRPS or POTS at 2.

## C. **Plaintiff Abandoned His Vaccine Court Claim**

Plaintiff contends that at age 30, one or more undisclosed health care provider(s) in Glendale, California recommended that Plaintiff receive the Gardasil vaccine, he consented, and he ultimately received the vaccine on July 3, 2019 and its second dose on September 16, 2019.  Compl., ¶¶ 344-45, 347, 350.  These prescribing decisions, as described in the Complaint, fully align with the CDC's guidelines.

Thereafter, on June 1, 2021, Plaintiff filed a petition with the U.S. Court of Federal Claims ("Vaccine Court") seeking compensation for his alleged vaccine-related injuries under the National Vaccine Injury Compensation Program, but those proceedings concluded (presumably without award) on February 14, 2022.  *See Atjian v. Sec'y of Health & Hum. Servs.*, 2022 WL 792105, at *1 (Fed. Cl. Feb. 14, 2022) (describing filing of Vaccine Court petition and voluntary withdrawal of claim); Compl., ¶¶ 359-60.

## III. ARGUMENT

Plaintiff's Complaint fails to state a claim and should be dismissed. ***First***, Plaintiff's thinly veiled design defect claims are expressly preempted by the Vaccine Act, even if shrouded in other causes of action. ***Second***, Plaintiff fails to plead the necessary elements of his strict liability claims (Counts II, III) and, in any event, fails to plead facts to support either claim. ***Third,*** Plaintiff's warning-based claims (Counts II, IV, V, VI) are barred by the Vaccine Act and the learned intermediary

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

doctrine. **Fourth**, Plaintiff fails to plead his fraud claims (Counts V, VI) with the requisite particularity required by the federal rules. **Fifth**, Plaintiff is not entitled to the remedies he seeks under the UCL (Count VI). **Sixth**, and finally, Plaintiff's shotgun negligence claim (Count I) is duplicative of his other claims and thus fails.

## A.   <u>Federal Law Preempts Plaintiff's Design Defect Claims</u>

Plaintiff avoids explicitly naming any of his counts a "design defect" claim, and for good reason—the U.S. Supreme Court has held that design-defect claims are expressly preempted by the Vaccine Act. *See Bruesewitz*, 562 U.S. at 243; 42 U.S.C. § 300aa-22(b)(1); *see also Holmes v. Merck & Co., Inc.*, 697 F.3d 1080, 1084 (9th Cir. 2012) (providing that the Vaccine Act "expressly preempts design-defect claims seeking compensation for injury or death caused by a vaccine's unavoidable side effects."). And, examining similar allegations to those in this case, multiple federal courts have peeled back other plaintiffs' efforts to camouflage preempted design-defect claims and dismissed the same types of claims alleged by Plaintiff. *See Colbath*, 2022 WL 935195, at *5; *Flores*, 2022 WL 798374, at *3; *Stratton*, 2021 WL 5416705, at *2.

Plaintiff's Complaint nevertheless includes poorly disguised design-defect allegations that are among the bases of his claims.  For example, the Complaint's negligence allegations are founded on, among other things, Merck's role as a "researcher" and alleged duty to use reasonable care in the "research" of Gardasil and to take all reasonable steps necessary in the research of the vaccine.  Compl., ¶¶ 364-65.

Further, entire sections of the Complaint are devoted to attacks on Gardasil's FDA-approved design, lobbing unfounded, conclusory allegations about the intended (and otherwise known) constituents of the vaccine. *See, e.g.*, Compl., ¶¶ 127–60 (section beginning with the header "The Gardasil Vaccines Contain Numerous Hazardous Ingredients, Including At Least One Ingredient Merck Failed to Disclose to Regulators and the Public.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

The Complaint attacks Gardasil's ingredients, including allegations regarding "HPV-LI-DNA fragments [] in Gardasil," as allegedly "secret and potentially hazardous." Compl., ¶ 135. Yet, this constituent is no "secret," and the FDA long ago expressly debunked Plaintiff's claims regarding it. *See* Ex. U, 10/21/2011 FDA Information on Gardasil – Presence of DNA Fragments Expected, No Safety Risk ("The presence of DNA fragments is expected in Gardasil and not evidence of contamination."). Similarly, the Complaint takes issue with the "yeast," "sodium borate," and "Polysorbate 80" components of the Gardasil vaccine. Compl., ¶¶ 127–33, 146–60. The FDA-approved Label plainly details that each dose contains these constituents. Ex. V. Plaintiff likewise spills much ink regarding the Amorphous Aluminum Hydroxyphosphate Sulfate ("AAHS") constituent of Gardasil, flatly claiming that it is "toxic." Compl., ¶¶ 127-33. This component of Gardasil is also clearly identified in the FDA-approved labeling. Ex. V.

Plaintiff's criticisms of Gardasil's design have no place in this lawsuit. He cannot circumvent the substantive import of design-defect preemption with creative pleading. As the FDA-approved "design itself" of Gardasil "is not open to question," *Bruesewitz*, 562 U.S. at 232, this Court should also dismiss Plaintiff's claims challenging the design of Gardasil and its ingredients.

### B.    Plaintiff's Manufacturing Defect Claim Fails

Beyond being preempted as a design defect claim, Plaintiff's "manufacturing defect" claim fails because he does not allege that his *particular* Gardasil doses were defective, and how any purported defects caused his injury. As detailed below, every federal court to consider allegations like Plaintiff's related to the manufacture of Gardasil (including courts in California and elsewhere in the Ninth Circuit) has found them inadequately pleaded.

At a minimum, "[a] plaintiff pursuing a *manufacturing defect* claim must identify how the product either deviated from the manufacturer's intended design or how the product deviated from other seemingly identical models." *Eldib v. Bausch*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

& *Lomb, Inc.*, 2021 WL 4734641, at *2 (C.D. Cal. June 8, 2021); *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1160 (E.D. Cal. 2019) (noting that "a bare allegation that the product had 'a manufacturing defect' is an insufficient legal conclusion"). In manufacturing defect claims, the "[f]ocus is on whether the ***particular product*** involved in the incident was manufactured in conformity with the manufacturer's design." *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (2002) (emphasis added). "Generally, a 'manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.'" *Marroquin*, 367 F. Supp. 3d at 1160. "That is, 'the product does not conform to the manufacturer's design.'" *Id.*

Plaintiff has not adequately pled (1) whether and how his specific Gardasil doses allegedly deviated from Merck's FDA-approved design; or (2) how any such deviation was the proximate cause of his injuries.  Plaintiff's failure to properly plead a manufacturing defect is particularly pointed due to the FDA's rigorous manufacturing standards for all vaccines, including Gardasil.  The FDA has stated that "[v]accines [like Gardasil] are manufactured in batches called lots." Ex. P. "All vaccine lots are routinely tested and must pass all tests before they can be used, and vaccine manufacturers must comply with strict manufacturing standards." *Id.* And the FDA "analyzes adverse events (possible side effects) associated with individual lots to look for any unusual patterns." *Id.*

Plaintiff fails to identify which particular FDA-approved lots contained his Gardasil doses, how his particular doses deviated in any way from Merck's FDA-approved standards and processes, or how his particular doses departed from their intended design.  In fact, Plaintiff affirmatively alleges that his Gardasil doses reached him "without substantial change in their condition as designed" – an admission that he cannot plausibly reconcile with his manufacturing defect claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

1   Compl., ¶ 411. What Plaintiff pleads as a manufacturing defect is, in reality,
2   nothing more than a preempted design defect claim.

3        The most Plaintiff can muster are conclusory allegations, "[u]pon
4   information and belief," that his Gardasil doses "failed to comply with" unspecified
5   "manufacturing specifications" and contained undisclosed "ingredients and
6   neurotoxins," including by way of example, "HPV L1-DNA fragments" and
7   "phenylmethylsulfonyl fluoride." *Id. ¶¶* 408-10.   Every federal court to address
8   the issue has found identical allegations lodged by other plaintiffs alleging injuries
9   related to Gardasil fail to state a manufacturing-defect claim. *See, e.g.*, *Colbath*,
10  2022 WL 935195, at *1, *5 (dismissing manufacturing defect claim premised, in
11  part, on purported presence of "undisclosed DNA fragments and dangerous toxins"
12  in doses of Gardasil administered in 2014 by a California health provider); *Herlth*,
13  2022 WL 788669, at *1, *6 (same, two Gardasil doses administered in Connecticut
14  in 2013); *Flores,* 2022 WL 798374, at *7 (same, two Gardasil doses administered
15  in Nevada in 2012-13), *Stratton*, 2021 WL 5416705, at *3–4 (same, one Gardasil
16  dose administered in South Carolina in 2017).

17       Because Plaintiff fails to allege how, if at all, his particular doses of Gardasil
18  departed from their intended design, fails to allege what manufacturing procedures
19  were not followed in producing his specific doses, and concedes that his Gardasil
20  doses were administered to him "as designed," Plaintiff's manufacturing defect
21  claim should be dismissed.  Compl., ¶ 411.

22      **C.**    **Plaintiff's Warning-Related Claims Fail**

23       Plaintiff's vague allegations fail to state a claim for failure-to-warn under a
24  negligence (Count One) or strict liability (Count Two) theory.[4]  He vaguely alleges
25  that Merck failed to warn (1) Plaintiff of the claimed risks, and/or (2) his unnamed
26  "medical providers" of the claimed risks.  Both federal and California law bar

27  ---
28  [4] Plaintiff has sprinkled challenges to the warnings accompanying Gardasil
    throughout his Complaint, including Count Three for strict liability manufacturing
    defect.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

claims based on an alleged failure to warn Plaintiff (rather than Plaintiff's Prescriber(s)).  And Plaintiff pleads no facts supporting a claim that Merck failed to warn his Prescriber(s) (whomever they may be).

> 1. <u>Plaintiff's Theory Based on Merck's Alleged Failure to Warn Him Fails</u>

Plaintiff primarily alleges that Merck failed to warn him of Gardasil's potential risks. Compl., ¶ 373 (n–o) (alleging Merck was negligent in "[f]ailing to disclose to **Plaintiff** and his medical providers and to the general public that use of and exposure to Gardasil presents severe risks") (emphasis added), ¶¶ 389, 393, 412 (alleging that Merck "failed to warn of the risks associated with Gardasil" and that "**Plaintiff** relied upon the skill, superior knowledge, and judgment of Merck") (emphasis added). But Plaintiff's theory that Merck was required to warn him directly cannot be squared with the Vaccine Act or California's learned intermediary doctrine.

Plaintiff's theories based on Merck's alleged failure to warn anyone other than Plaintiff's Prescriber(s) contravene the Vaccine Act, which prohibits civil actions "for damages arising from a vaccine-related injury" "solely due to" a vaccine "manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative)."  42 U.S.C. § 300aa-22(c). The Vaccine Act thus "eliminat[es] liability for not providing direct warnings to a claimant." *Holmes,* 697 F.3d at 1083.  In other words, as to Merck's "alleged failure to warn Plaintiff *directly,* the Vaccine Act bars [his] claim."  *Stratton,* 2021 WL 5416705, at *5; *see also Flores,* 2022 WL 798374, at *4 (same); *Blackmon v. Am. Home Prods. Corp.,* 328 F. Supp. 2d 659, 666 (S.D. Tex. 2004) (same, failure to provide direct warnings to public or plaintiff).

Under California law, the learned intermediary doctrine also forecloses Plaintiff's theories based on a supposed failure to warn anyone other than his Prescriber.  "[I]n the case of prescription drugs and medical devices, 'the duty to

warn runs to the physician, not to the patient.'" *Shahbaz v. Johnson & Johnson*, 2020 WL 5894590, at *14 (C.D. Cal. July 31, 2020); *see also Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1116 (Cal. 1996) (recognizing learned intermediary doctrine). Accordingly, Plaintiff cannot state a failure-to-warn claim based on any supposed duty to warn him directly.

> ### 2.   Plaintiff Fails to Allege That Any Alleged "Failure to Warn" His Prescriber(s) Caused His Injuries

To the extent Plaintiff's claims are premised on Merck's alleged failure to warn his Prescriber(s), those claims fare no better.  As another district court in the Ninth Circuit explained in dismissing a similar claim, Plaintiff "broadly alleges that Merck failed to warn 'medical providers' of Gardasil's 'dangerous propensities' and true risks" but "fails to clarify what these [allegedly dangerous] characteristics were, and which risks were and were not conveyed to [Plaintiff's] doctor, specifically."  *Flores*, 2022 WL 798374, at *5. Indeed, despite the Complaint's excessive length, Plaintiff's "allegations are conclusory and do not yield a facially plausible claim." *Id.* Plaintiff pleads ***no facts*** to support a claim that his alleged injuries were caused by Merck's failure to warn his undisclosed Prescriber(s). This is a fundamental tenet of a warning claim: "Plaintiffs must [] show that the failure to warn caused their injuries." *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1144 (S.D. Cal. 2016). He fails to do so here.

Plaintiff cannot establish that any purportedly deficient warning accompanying his Gardasil doses proximately caused his alleged injury without demonstrating that his Prescriber(s) relied on the Gardasil Label or other materials from Merck in making the critical prescribing decision for Plaintiff.[5]  Plaintiff

---

[5] This failure to allege that Plaintiff's Prescriber(s) read—much less relied upon—Gardasil's Label is particularly problematic when, as here, the Label specifically warns of Plaintiff's alleged adverse reaction. *Compare* Compl., ¶¶ 348-50 (alleging Plaintiff suffered an allergic reaction to Gardasil), *with* Ex. V, Gardasil 9 Label at 4 ("Appropriate medical treatment and supervision must be readily available in case of anaphylactic reactions following the administration of GARDASIL 9.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

pleads no facts to support that his Prescriber(s) read, much less relied upon, any particular information provided by Merck.  For that reason, he fails to plausibly allege that Merck's supposed failure to warn caused his injuries and thus fails to state a claim. *Renteria v. Ethicon, Inc.*, 2020 WL 7414744, at *7 (C.D. Cal. Nov. 18, 2020) ("Where a physician did not read the manufacturer's product warnings, there is no causal connection on the failure to warn claim as a matter of law."); *Motus v. Pfizer Inc. (Roerig Div.)*, 358 F.3d 659, 661 (9th Cir. 2004) ("Because the doctor testified that she did not read the warning label that accompanied Zoloft...before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case."); *Nimtz v. Cepin*, 2011 WL 831182, at *2-3 (S.D. Cal. Mar. 3, 2011) (finding generic allegations that a defendant failed to provide instructions and/or warnings "'concerning the defective condition, characteristics, and risks associated with said product'" constitute a "legal conclusion that does not allege a plausible cause of action").

Instead of pleading this necessary causal link, Plaintiff simply speculates that "[h]ad Merck . . . provided adequate and truthful warnings . . . to medical providers, patients and the public, then ***upon information and belief***, Plaintiff's medical providers would not have offered or recommended Gardasil to Plaintiff." Compl., ¶ 375 (emphasis added); *see also id.* ¶¶ 377, 400, 454.  Although "a court must accept as true all of the allegations contained in a complaint," that "tenet … is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has access to his own Prescriber(s), so "pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012); *see, e.g.*, *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding allegations based "upon information and belief" insufficient where no further facts were alleged); *Simonyan v. Ally Fin. Inc.*, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (noting that "factual allegations . . . based on 'information and belief' and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

contain[ing] nothing more than a rote recitation of the required elements of each respective claim . . . fall well short of the requirements set forth in *Iqbal*"); *Dorsett v. Sandoz, Inc.*, 2010 WL 11512276, at n.2 (C.D. Cal. June 29, 2010) (describing plaintiff's failure to contact prescribing physician at the pleading stage as "most troubling" under Rule 11); *but see Colbath*, 2022 WL 935195, at *4 (finding that "on information and belief" allegations that specifically named a plaintiff's vaccinating physician were sufficient to state a claim).

At a minimum, governing federal procedure and California law obligate Plaintiff to allege specific factual allegations regarding (1) who his Prescriber(s) were; (2) what information, if any, his Prescriber(s) supposedly did not know about Gardasil before recommending it to Plaintiff; (3) what information his Prescriber(s) actually wanted to know but did not know about Gardasil before recommending it to Plaintiff; and (4) what facts, if known, would have actually altered the decision of the Prescriber(s) to recommend Gardasil to Plaintiff twice – that is, what facts would have actually made the Prescriber(s) decline to provide Gardasil to Plaintiff. His bald legal conclusions regarding the thought processes and conduct of his undisclosed Prescriber(s) – particularly where he fails even to allege that any such Prescriber(s) ever read the Gardasil Label – cannot state a cause of action for failure to warn. *See, Flores,* 2022 WL 798374, at *5.

### D.   Plaintiff's Breach of Express Warranty Claim Fails.

Plaintiff's express warranty claim (Count IV), is a repackaged failure-to-warn claim based entirely on supposed representations to Plaintiff – not his Prescriber(s) – regarding the alleged risks of Gardasil. *See, e.g.*, Compl., ¶ 427 ("Plaintiff had no knowledge of the falsity or incompleteness of Merck's statements and representations concerning Gardasil."); *id.* ¶ 428 ("Plaintiff was exposed to and relied upon the ubiquitous promotional material and representations Merck made . . . ."). The Court should dismiss this claim for multiple reasons.

***First***, Plaintiff's breach of warranty claim fails because, as discussed above,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

the Vaccine Act bars any theory of recovery predicated on Merck's alleged statements to him.  42 U.S.C. § 300aa-22(c); *Holmes*, 697 F.3d at 1083 (the Vaccine Act "eliminat[es] liability for not providing direct warnings to a claimant").

**Second**, even if the Vaccine Act did not bar Plaintiff's claim (though it does), California's learned intermediary doctrine applies and compels the same result. *Colbath*, 2022 WL 935195, at *6 (dismissing express warranty claim in a similar Gardasil case where the plaintiff failed to "allege that his physician relied on" any alleged warranties); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1162 (S.D. Cal. 2015) ("[T]he 'learned intermediary' rule applies to a breach of express warranty claim predicated on a failure to warn claim . . . . Under the 'learned intermediary' doctrine, the express warranties run to the physician, and not to Plaintiff."). Nowhere does Plaintiff allege that any Prescriber read, much less relied upon, any supposed warranties by Merck relating to Gardasil.  Plaintiff's entire claim is premised on what he – not his Prescriber(s) – was "exposed to."  Compl., ¶ 428. Plaintiff's warranty claim cannot proceed on this basis. *Colbath*, 2022 WL 935195, at *6; *Tapia*, 116 F. Supp. 3d at 1162.

**Third**, Plaintiff has not pled facts necessary to establish any express warranty or that he provided the requisite pre-suit notice of an alleged breach of such express warranty to Merck.  He also does not plead any privity with Merck. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 920 (N.D. Cal. 2014); *Sukonik v. Wright Med. Tech., Inc.*, 2015 WL 10682986, at *13 (C.D. Cal. Jan. 26, 2015); *Adams v. I-Flow Corp.*, 2010 WL 1339948, at *4 (C.D. Cal. Mar. 30, 2010) ("the transaction is between the manufacturer and the physician, not the patient.").

**E.   Plaintiff's Common Law Fraud Claim Fails.**

Plaintiff's "common law fraud" claim (Count Five) should be dismissed because it is (1) barred by the Vaccine Act; (2) barred by the learned intermediary

doctrine; and (3) lacking the particularity required by Federal Rule of Civil Procedure 9(b).  Further, to the extent Plaintiff contends his claim is one for fraudulent concealment, Plaintiff has not pled and cannot plead the facts needed to prove a necessary element of such a claim – the Complaint does not allege any basis to find a duty to disclose (or relationship between Merck and Plaintiff) that would give rise to a fraudulent concealment claim.

Plaintiff's fraud-based theories simply recycle his deficient failure-to-warn allegations.  *See, e.g.*, Compl., ¶¶ 439-41 ("At all times relevant to this litigation, Merck expressly represented...that Gardasil was safe and effective at preventing cancer. These express representations included incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with Gardasil."). As discussed *supra*, the Vaccine Act and learned intermediary doctrine bar any theory based on any supposed failure to warn anyone other than Plaintiff's Prescriber.

Further, Plaintiff's fraud claims, which can be categorized as based on (1) alleged public advertising, (2) alleged marketing to the medical community, and (3) generic allegations of fraudulent conduct, should all be dismissed because Plaintiff has not satisfied the particularity requirements of Rule 9(b).  *See, e.g*., *Flores*, 2022 WL 798374, at *7–8; *Herlth*, 2022 WL 788669, at *10; *Stratton*, 2021 WL 5416705, at *7 (dismissing fraud-based claims as noncompliant with Rule 9(b)).

### 1.   Alleged Public Advertisements

Even if the Vaccine Act and California law permitted Plaintiff to bring a claim for a supposed failure to warn him (though they do not), his failure to specifically allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" warrant dismissal of his fraud claim.  *Zetz v. Bos.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

*Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

Plaintiff generically refers to Merck's "ubiquitous" advertising campaigns for Gardasil, Compl., ¶¶ 377, 400, 428, 440, 442, but his Complaint focuses on only one: the "One Less" campaign.[6] According to the Complaint, this advertisement stated that Gardasil was safe and effective in preventing cervical cancer, but Plaintiff does not plead ***when*** or ***where*** he purportedly saw the ad. Compl., ¶¶ 83, 441. Those shortcomings warrant the dismissal of Plaintiff's fraud claim here.  Rule 9(b) requires more particularity. *Zetz*, 398 F. Supp. 3d at 714.

Further, "setting aside the accuracy of [his] portrayal of the ads . . . [Plaintiff] does not demonstrate with specificity why and how each statement was false or misleading." *Herlth*, 2022 WL 788669, at *8 (cleaned up). Plaintiff must plead with particularity the specific details as to "what is false or misleading about the purportedly fraudulent statement, and why it is false," and he fails to do so in his Complaint. *Zetz*, 398 F. Supp. 3d at 713; Compl., ¶¶ 347, 377, 400, 428, 440. Plaintiff has not done so with respect to his claims that Merck represented Gardasil as safe and effective – statements that are echoed by the FDA, CDC, NIH, WHO, EMA and others.

## 2. Alleged Marketing to the Medical Community

Plaintiff 's "claim of fraud against medical providers is alleged with even less particularity." *Herlth*, 2022 WL 788669, at *9.  Critically, Plaintiff has not identified his Prescriber(s) or specifically alleged that his Prescriber(s) saw and relied on Merck's alleged representations, let alone a specific one.  This alone is

---

[6] Plaintiff also describes another "television campaign[], conducted in 2016," during which actors "asked the following question: Did you know? Mom? Dad?" Compl., ¶81.  Nowhere in his Complaint does he allege that his Prescriber saw this advertisement; when and where it was allegedly seen by his Prescriber or her; or how the reliance of anyone on anything stated in that advertisement – much less the type of fraudulent representations required for a fraud claim – resulted in his damages.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

grounds for dismissal. *Dorsett*, 2010 WL 11512276, at *3 (finding failure to meet requirements of Rule 9(b) where plaintiff named prescribing physicians but failed to do more than "allege[] generally that this doctor relied on Defendants' representations and omissions"); *Hill v. Davol Inc.*, 2016 WL 10988657, at *8 (C.D. Cal. Nov. 16, 2016).  As discussed above, Plaintiff only alleges that his Prescriber(s) were exposed to Merck's alleged representations "upon information and belief," much less that those Prescriber(s) relied on them. Compl., ¶¶ 375, 377, 400, 454.

The Complaint states that "a presentation to medical doctors" said "women who do not get the vaccine will go on to develop cancer." Compl., ¶ 114. This allegation regarding an unattributed statement includes no further details, such as when the presentation occurred, where it occurred, who gave it, whether any Prescriber attended it, or any basis to suggest that it had any role in Plaintiff's receipt of Gardasil. This does not come close to the level of specificity that Rule 9(b) requires. *Zetz*, 398 F. Supp. at 713; *Marroquin*, 367 F. Supp. 3d at 1166-67.

Plaintiff makes similarly vague references to "door-to-door marketing to doctors," Compl., ¶ 63, and "dishonesty in the clinical tests" for Gardasil that allegedly "led many physicians to recommend the vaccination," *id.* ¶ 165, but Plaintiff does not point to specific marketing materials, the time period when this allegedly occurred, or even whether this marketing happened in California.  Nor do these claims identify any materials or clinical test data that any Prescriber(s) purportedly saw – much less relied on – in recommending Gardasil to Plaintiff. This is insufficient under Rule 9(b). *See, e.g.*, *Colbath*, 2022 WL 935195, at *8 (dismissing misrepresentation claims where plaintiff failed "to allege that his medical providers saw, let alone relied on Defendants' affirmative misrepresentations").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

### 3.   Alleged Fraudulent Conduct

Plaintiff's effort to characterize his "common law fraud" count as one for fraudulent concealment similarly fails, as the Complaint does not plead the facts required to prove each of the necessary elements of the claim, let alone with the requisite specificity required under Rule 9(b).  Specifically, the Complaint contains no allegations that, even if assumed to be true, would establish that Merck was under a duty to disclose any information about Gardasil to Plaintiff.  *Bigler-Engler*, 7 Cal. App. 5th at 310-11.

A legal duty for purposes of fraudulent concealment can arise in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Hoffman*, 228 Cal. App. 4th at 1186 (citing *LiMandri*, 52 Cal. App. 4th at 336). The second, third and fourth circumstances "***presuppose the existence of some other relationship*** between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri*, 52 Cal. App. 4th at 336-37 (emphasis added).

Here, Plaintiff alleges (albeit without any particularity) that Merck knew certain (unspecified) facts, concealed them from Plaintiff, and that Plaintiff was injured.  But "where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is ***some relationship*** between the parties which gives rise to a duty to disclose such known facts." *Id.* (emphasis in original).  The relationship must be built on "some sort of ***transaction*** between the parties . . . .  Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *LiMandri*, 52 Cal. App. 4th at 337 (emphasis in original).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

Plaintiff does not allege that he bought Gardasil from Merck, that Merck is his employer, or that he has any kind of contractual agreement with Merck.  There is no "transaction" or "relationship" of any kind alleged in the Complaint.  This cause of action fails for this straightforward reason. *Bigler-Engler,* 7 Cal. App. 5th at 290; *Westgate v. Coloplast Corp.* 2018 WL 6380746 at *3-4 (C.D. Cal. Sept. 6, 2018).

### 4.    Other Allegedly Fraudulent Conduct

Plaintiff's fraudulent conduct "allegations stray even further from Rule 9(b)'s specificity requirements." *Flores*, 2022 WL 798374, at *8. The Complaint also alleges that Merck engaged in "additional fraudulent activities" that are nothing more than a legally defunct "failure-to-test" theory.  *See, e.g.*, Compl., ¶ 454 (alleging that Merck "[f]ail[ed] to test Gardasil against a true inert placebo" and "[f]ail[ed] to conduct a sufficient number of studies").  Plaintiff's skeletal allegations not only fail the heightened pleading standard for fraud, but also fail to state a claim because, under California law, a "failure to test" claim is "not maintainable as an independent duty." *Baker v. Bayer Healthcare Pharm., Inc.*, 2013 WL 6698653, at *3 (N.D. Cal. Dec. 19, 2013).  California imposes no liability for breach of an independent duty to conduct testing, particularly "where the causal link to the known harm to plaintiff is the unknown outcome of testing that was not done," as such an imposition "would be beyond the pale of any California tort doctrine we can identify."  *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1486 (Cal. App. 1999) (emphasis in original).  Accordingly, Plaintiff's generic failure-to-test allegations cannot rescue his fraud claim.

### F.    Plaintiff Fails to State a Claim under the UCL and Seeks Unavailable Remedies

#### 1.    Plaintiff's Failure to State a Claim under the UCL

Plaintiff's UCL claim is yet another repackaged claim for an alleged failure to warn. *See* Compl., ¶ 469 ("Defendants has [sic] engaged in the unlawful business

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

practice of misleading Plaintiff regarding the Gardasil vaccines' true safety."); *id.*
¶¶ 470–78. Plaintiff's claim contemplates no failure to warn his Prescriber(s)—it is
based entirely on warnings Merck allegedly gave or failed to give Plaintiff. *Id.* ¶¶
469–78. Nor can Plaintiff rely on the rest of his Complaint, which as set out above
makes no factual allegations regarding Plaintiff's Prescriber(s) or their exposure to
statements by Merck, but only allegations "upon information and belief." Compl.,
¶¶ 375, 377, 400, 454. Accordingly, his warnings-based UCL claim cannot proceed
under the Vaccine Act or California's learned intermediary doctrine. *See supra*, pp.
17-18. *See Saavedra v. Eli Lilly & Co.*, 2013 WL 3148923, at *3 (C.D. Cal. June
13, 2013) (collecting cases).

To the extent Plaintiff's UCL claim purports to sound in fraud, the same Rule
9(b) infirmities outlined above persist. *See supra*, pp. 20-25; *see also Andren*, 207
F. Supp. 3d at 1140; *Wendell v. Johnson & Johnson*, 2010 WL 271423, at *3 (N.D.
Cal. Jan. 20, 2010) (dismissing UCL claim because it was "grounded in allegations
of fraud" that failed to meet Rule 9(b)); *Broge v. ALN Int'l, Inc.*, 2018 WL
2197524, at *5 (N.D. Cal. May 14, 2018); *Patton v. Forest Labs.*, LLC, 2018 WL
5270476, at *18 (C.D. Cal. May 10, 2018), *aff'd sub nom. Patton v. Forest Labs.,
Inc.*, 793 F. App'x 608 (9th Cir. 2020).

### 2.    Plaintiff's Unavailable Remedies

Plaintiff's UCL Count also improperly seeks monetary damages, punitive
damages, and injunctive relief. No monetary relief is available under the UCL.
*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("This
court has never approved of nonrestitutionary disgorgement of profits as a remedy
under the UCL."); *Forty Niner Truck Plaza, Inc. v. Shank*, 2011 WL 4386299, at *2
(E.D. Cal. Sept. 20, 2011) ("A claim under [the UCL] is 'equitable in nature;
damages cannot be recovered'"). Even if Plaintiff styled all his requested monetary
relief as restitution, which he does not, the UCL does not provide for the relief he

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

seeks. *See Korea Supply*, 29 Cal. 4th at 1149 ("Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took *directly* from plaintiff.") (emphasis added). Plaintiff never provided Merck with any money and does not allege so, as Merck did not provide Plaintiff with his vaccines; assuming Plaintiff paid for his Gardasil vaccination at all,[7] he would have paid his medical provider or insurance company.

In addition to seeking monetary damages the UCL does not allow, Plaintiff seeks impermissible injunctive relief. Compl., ¶ 480. This remedy is unavailable to Plaintiff because he alleges he was harmed by Gardasil, but does not (and cannot) allege any threat of ***repeated*** injury. A plaintiff seeking injunctive relief from a federal court must allege not only that he has "suffered or is threatened with a concrete and particularized legal harm," but also that there is "a sufficient likelihood that []he will ***again be wronged*** in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (emphasis added) (internal quotation marks omitted); *see also Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016) ("Plaintiffs allege that they were 'induced' to purchase [a product] by Defendant's misrepresentations and omissions, and had they known [the truth], they would not have purchased them on the same terms. ***Now they know***. ***There is no danger that they will be misled in the future***.") (emphasis added). Plaintiff has not pled that he will again be wronged in a similar way, and therefore cannot seek injunctive relief. Plaintiff's UCL claim should be dismissed.

## G.     Plaintiff's Shotgun Negligence Claim Fails.

The Court should dismiss Plaintiff's negligence claim (Count One) for the additional reason that it constitutes an improper "shotgun" pleading. *Sollberger v. Wachovia Sec., LLC,* 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ("Shotgun

---

[7] HPV vaccines have been fully covered by private health insurers since 2010 under the Affordable Care Act. Ex. W, HealthCare.gov, Preventive care benefits for adults (covering "[i]mmunizations for adults," including those for Human Papillomavirus).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations.").

Plaintiff incorporates over 400 paragraphs into his negligence claim and baldly avers that "Merck's negligence is outlined in detail in this Complaint, and included, among other things" a widely varied list of vague, apparently non-exhaustive allegations.  Compl., ¶¶ 361, 373.  Many allegations have nothing to do with this case, including Plaintiff's meanderings about Vioxx, a prescription medication that he did not take (*id*. ¶¶ 14-25) and alleged risks that Gardasil causes certain conditions that Plaintiff has not experienced (*id*. ¶¶ 102-08, 149, 155, 241-55, 282-87).  When his Complaint does try to address this case, Plaintiff accuses Merck of negligence in the "research, manufacture, labeling and development of Gardasil." *Id*. ¶ 373 (k).  Lumping these four separate and distinct causes of action together fails under Rule 8(a) because the allegations are "unclear and appear to aggregate several distinct theories of liability." *Flores*, 2022 WL 798374, at *3.  This constitutes an unacceptable shotgun pleading, and his claim should be dismissed on this basis.

To the extent the substance of Plaintiff's allegations can be discerned, his negligence claim appears to repeat his other claims and fails for all the same reasons.  For example, Plaintiff purports to bring negligent failure-to-warn theories as part of Count One; they fail for the reasons outlined in Sec. III.C.  Compl., ¶ 373 (l)–(p), (v).  He also purports to bring a claim for negligence in "false advertising," "false promotion," and other claims sounding in fraud that fail as outlined in Sec. III.E. *Id*. ¶ 373 (q)–(u), (w).  Moreover, his allegations related to Gardasil's pre-approval testing second-guess the FDA-approved design of the vaccine.  Such claims are expressly preempted and constitute a failure-to-test claim that California does not recognize.  Count One should be dismissed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS

1

## IV.   **<u>CONCLUSION</u>**

2

     For all of the foregoing reasons, Merck respectfully respects that the Court

3

grant this Motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

4

Dated: July 6, 2022

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MORGAN, LEWIS & BOCKIUS LLP**

By: _/s/ Deanne L. Miller_
Deanne Miller
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Telephone: (213) 612-2536
deanne.miller@morganlewis.com
_Attorney for Defendants_

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

25

CASE NO. 8:22-CV-00431-FWS-JDE
MERCK'S MOTION TO DISMISS